UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 24-cv-80250-Middlebrooks/Matthewman

DAMION ANTHONY DELAPENA,

    Petitioner,

v.

DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA,

    Respondent.

_____/

FILED BY_____SW____D.C.

Feb 3, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY [DE 1]

THIS CAUSE is before the Court upon Petitioner, Damion Anthony Delapena's ("Petitioner") Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Court Custody ("Petition") [DE 1]. The matter was referred to the undersigned United States Magistrate Judge by the Honorable Donald M. Middlebrooks, United States District Judge. *See* DE 3. Respondent, the Department of Corrections, State of Florida ("Respondent"), has filed an Amended Response to the Petition [DE 11], an Appendix [DE 7], and transcripts [DE 8; 9; 10]. Petitioner has opted not to file a reply. The Court has reviewed and carefully considered the Petition, the Response, the exhibits, the transcripts, and all pertinent portions of the underlying criminal file.

## I.    BACKGROUND

On March 23, 2018, Petitioner was charged by Amended Information with robbery with a deadly weapon while wearing a mask, in violation of sections 812.13(1) and (2)(a) and 775.0845,

1

Florida Statutes, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 2018CF001253AMB). [DE 7-1, Ex. 7].

On April 19, 2018, Petitioner was charged a second time by Amended Information with robbery with a deadly weapon while wearing a mask, in violation of sections 812.13(1) and (2)(a) and 775.0845, Florida Statutes, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 2018CF001303AMB). [DE 7-1, Ex. 1].

On April 19, 2018, Petitioner was charged a third time by Amended Information with robbery with a deadly weapon while wearing a mask, in violation of sections 812.13(1) and (2)(a) and 775.0845, Florida Statutes, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 2018CF001255AMB). [DE 7-1, Ex. 3].

Then, on April 23, 2018, Petitioner was charged a fourth time by Amended Information with two counts of robbery with a deadly weapon while wearing a mask, in violation of sections 775.087(2)(a)1, 812.13(1) and (2)(a) and 775.0845, Florida Statutes, and one count of aggravated assault (deadly weapon) while wearing a mask, in violation of sections 784.021(1)(a) and 775.0845, Florida Statutes, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 2018CF002989AMB). [DE 7-1, Ex. 9].

Finally, on May 16, 2018, Petitioner was charged by Information with two counts of robbery with a firearm, in violation of sections 775.087(2)(a)l, 812.13(1) and (2)(a), Florida Statutes, in in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 2018CF003976AMB). [DE 7-1, Ex. 5]. All were first-degree felonies, except for the aggravated assault (deadly weapon) while wearing a mask, which was a second-degree felony.

On March 5, 2019, Petitioner pleaded guilty to all charges in all of the cases. [DE 7-1, Ex. 11]. He also initialed and signed the Waiver of Rights Sheet. [DE 7-1, Ex. 11]. On June 7, 2019, the state court judge sentenced Petitioner to 330 months in prison with 427 days as credit for time served. [DE 7-1, Ex. 13]. On June 26, 2019, Petitioner filed a Notice of Appeal from Final Order. [DE 7-1, Ex. 16]. Thereafter, on or about July 2, 2019, Petitioner filed a *pro se* Motion to Withdraw Plea After Sentencing. [DE 7-1, Ex. 14]. That motion was denied. [DE 7-1, Ex. 15]. On January 8, 2020, Petitioner voluntarily dismissed his appeal under Florida Rule of Appellant Procedure 9.350(b). [DE 7-1, Ex. 17]. The appeal was thereafter dismissed. [DE 7-1, Ex. 18].

On January 15, 2020, Petitioner filed a Motion for Postconviction Relief, arguing that he received ineffective assistance of counsel in that his attorney failed to advise him that there were grounds to file a motion to suppress, advised him that the cell phone records were not beneficial, and advised him to reject a favorable plea offer and enter an open plea because there were grounds for a downward departure. [DE 17-1, Ex. 19]. The trial court determined that it was appropriate to hold an evidentiary hearing on the Motion for Postconviction Relief. [DE 17-2, Ex. 21]. Thereafter, Petitioner requested leave to amend Ground 3 of the motion, which relief was granted. [DE 17-2, Ex. 22].

On January 11, 2023, the trial court conducted an evidentiary hearing and then entered a Final Order Denying Defendant's Motion for Postconviction Relief After Evidentiary Hearing on February 21, 2023. [DE 17-2, Ex. 23]. On March 22, 2023, Petitioner appealed the Order to the Fourth District Court of Appeal. [DE 17-2, Ex. 24]. On November 9, 2023, after the appeal was fully briefed, the Fourth District Court of Appeal *per curiam* affirmed the denial of Petitioner's motion. [DE 17-3, Ex. 28; *Delapena v. State*, 373 So. 3d 1152 (Fla. 4th DCA 2023)]. Mandate was

issued on December 1, 2023. [DE 17-3, Ex. 29].

## II.     PETITION AND RESPONSE

### A.  The Petition [DE 1]

In the Petition, Petitioner seeks federal habeas relief on three different grounds: (1) that defense counsel rendered ineffective assistance of counsel by advising Petitioner that there were no grounds to file a motion to suppress ("Ground 1); (2) that defense counsel rendered ineffective assistance of counsel by advising Petitioner that there were grounds for a downward departure should he enter an open plea ("Ground 2"); and (3) that defense counsel rendered ineffective assistance of counsel by advising Petitioner that the cell phone records obtained during discovery were not beneficial to him ("Ground 3"). [DE 1-2].

As to Ground 1, Petitioner argues the postconviction court "unreasonably applied clearly established Federal law by finding Delapena's ineffective assistance of counsel claim failed because the search warrant did contain probable cause to search Delapena's residence, and defense counsel cannot be found ineffective for failing to file a meritless motion to suppress." [DE 1-2 at 10]. He claims that he did, in fact, "establish that a motion to suppress would have been granted had it been filed" because the affidavit "failed to establish probable cause that Delapenas were involved in the robberies." *Id.* at 11. Petitioner additionally asserts that "law enforcement lacked probable cause to believe evidence would be at the residence of the Delapenas." *Id.* at 13. He argues that, "law enforcement at most established that they had reasonable suspicion to believe the vehicle may have been used in the robberies. This did not form a basis to search the Delapenas' residence." *Id.* at 14.

As to Ground 2, Petitioner argues that the postconviction court's "denial resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 19. This is because the postconviction court's

> first point about the claim failing because Delapena made a decision to enter an open plea without defense counsel's advice is contrary to the clear and convincing evidence presented in the State Court proceedings. Defense counsel testified at the evidentiary hearing that Delapena advised him of his interest to enter an open plea just prior to the start of trial. Prior to Delapena entering the open plea, defense counsel provided Delapena advice about downward departure sentencing. Since the evidence demonstrates that defense counsel's advice preceded Delapena['s] entry of the open plea, the postconviction court could not conclude that Delapena's decision to enter an open plea was made without regard to defense counsel's advice.

*Id.* Next, he claims that the postconviction court's "second reason for denying relief does not address Delapena's claim" in that "Delapena never asserted that he was unaware of the trial court's discretion to afford a downward departure sentence or of the sentencing exposure. The evidence demonstrates that Delapena never asserted that he was promised a certain sentence[.]" *Id.* at 20. According to Petitioner, "[d]efense counsel provided misadvice regarding the availability [of a] downward departure sentence because he advised Delapena of and argued grounds that were not and could not legally form a basis for a trial court to enter downward departure sentence." *Id.*

Finally, as to Ground 3, Petitioner argues that his brother Dewayne's cell phone records show that Dewayne was never in the area of any of the robberies at issue and Petitioner's cell phone records show that he was nearly two hours away when the January 28th robbery occurred. *Id.* at 23. He claims that the postconviction court's "denial resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Contrary to the postconviction court's conclusion, defense counsel's advice about the cell phone records not being beneficial was unreasonable." *Id.* at 25. Petitioner further asserts that, at the 3.850 proceeding" he "demonstrated that defense counsel performed deficiently by

5

incorrectly advising him that the cell phone records were not beneficial to his defense" and also "demonstrated that he was prejudiced by defense counsel's deficient performance because he would not have entered the open plea had he realized the phone records were beneficial to his defense." *Id.* at 26.

### B. The Response [DE 11]

The State first argues that Petitioner's claims in Grounds 1 and 3 have been waived and procedurally barred as a matter of law because Petitioner plead guilty to all charges without reserving the right to appeal and waived his right to a trial, to call witnesses, and to challenge how the evidence against him was obtained. [DE 11 at 40–44].

Next, as to Ground 1, the State contends that "Petitioner has failed to show either how the state court's application of Strickland was unreasonable, or that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *Id.* at 47. The State argues that "[u]nder the totality of the circumstances outlined in the supporting affidavit in the case at bar, it is clear that probable cause existed and, therefore, the judge did not err in issuing the search warrant." *Id.* at 48. Thus, "Petitioner would not have been successful in getting the evidence seized from the residence suppressed." *Id.* It also asserts that, "[e]ven assuming, arguendo, that the affidavit in support of the search warrant was insufficient, Petitioner did not assert anything to overcome the 'good faith' exception to the exclusionary rule." *Id.* at 52.

As to Ground 2, the State again contends that "Petitioner has failed to show either how the state court's application of Strickland was unreasonable, or that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings." *Id.* at 57. More specifically, the State maintains that, "[i]n order to make his argument, Petitioner by necessity ignores that Mair testified that Petitioner was never interested in a plea prior to the day of trial and that the switch to making an open plea of guilt to the court was made by Petitioner at the last minute." *Id.* In other words, it "was Petitioner's idea to plead hoping that the judge would give him a lenient sentence and Petitioner's trial counsel even testified that 'he never advised Petitioner they could file a motion for downward departure in order to get Petitioner to enter an open plea.'" *Id.* Instead, "the suggestion only came about after Petitioner had already made his decision to enter the plea." *Id.* The State also argues that Petitioner cannot establish prejudice since the "credible evidence adduced at the hearing showed that Petitioner arrived at court that morning and had decided to enter an open plea" and "[a]ny testimony from Petitioner on this issue should be completely disregarded where the record is clear that Petitioner lied about an alleged 7-year offer from the State in order to get a hearing." *Id.* at 58.

Finally, as to Ground 3, the State points out that it "did not allege that Petitioner and his brother committed the robberies together" and, "Petitioner has nothing to support this assertion other than his own self-serving testimony at the hearing that Dewayne never let anyone else drive his car (EH. 40), which the trial court justifiably did not find credible." [DE 61]. The State also clarifies the time stamp evidence and points out that hearing testimony shows that the "phone records don't conclusively show that Petitioner was not in an area." *Id.* at 61–62. The States argues that the "record does not support Petitioner's claim that the cell records would have support something akin to an alibi defense and trial counsel was not ineffective for advising Petitioner that the cell records were 'not particularly helpful.'" *Id.* at 62.

### III.   WHETHER PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING

As a preliminary matter, the Court finds that an evidentiary hearing is not required in this case. "Because this habeas petition can be resolved by reference to the state court record there is no need for an evidentiary hearing." *Josey v. Inch*, No. 19-62510-CV, 2020 WL 2497884, at *3 (S.D. Fla. Apr. 22, 2020), *report and recommendation adopted,* No. 19-CV-62510, 2020 WL 2494642 (S.D. Fla. May 14, 2020) (citing 28 U.S.C. § 2254(e)(2)); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)) (holding that, if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). Here, Petitioner has failed to demonstrate the existence of any factual disputes that warrant a federal evidentiary hearing. Furthermore, his claim does not rely on a "new rule of constitutional law" or a "factual predicate that could not have been previously discovered through the exercise of due diligence," and the facts of the underlying claim do not establish by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." *See* 28 U.S.C. § 2254(e). Therefore, Petitioner is not entitled to an evidentiary hearing and no evidentiary hearing shall be scheduled.

Further, the Court finds and RECOMMENDS that Petitioner's Petition be DENIED in its entirety, as discussed in detail below.

### IV.   RELEVANT LAW

Pursuant to 28 U.S.C. § 2254(d), an individual in state custody is entitled to federal habeas corpus relief only on the ground that he is in custody in violation of the United States Constitution or laws or treaties of the United States. To obtain habeas corpus relief from a federal court, a prisoner must demonstrate that the state court's ruling on the claim: 1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215–16 (11th Cir. 2001).

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in this Court's cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405–06. "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies such precedents to the facts in an objectively unreasonable manner." *Id.* In the context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). Federal courts are required to presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). State court decisions must be given a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily. *See Richter*, 560 U.S. at 96–100;

*Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

## V.    <u>ANALYSIS</u>

There is no dispute that Petitioner is in custody or that the Petition is timely under 28 U.S.C. § 2244(d)(1). *See* DE 11 at 28. Furthermore, as the same sub-issues raised in the Petition were raised in the postconviction motion and the appeal of the denial of the postconviction motion, the issues are therefore exhausted. Therefore, the Court can proceed directly to the merits of the Petition.

The AEPDA, however, rather strictly limits the Court's review of "any claim that was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d). This Court must determine only whether the state court's decision "involved an unreasonable application of[ ] clearly established federal law" or "was based on an unreasonable determination of the facts[.]" *Id*. Here, the last state court to adjudicate Petitioner's claims on the merits was the Fourth District Court of Appeal, which issued an unwritten opinion summarily affirming the state court. The Court is therefore required to perform a "'look-through' [of] the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In this case, this Court must therefore review the reasonableness of the state court's order. *See Cardona v. Dixon*, No. 19-81567-CIV, 2022 WL 2158715, at *6 (S.D. Fla. June 14, 2022) ("Since the [Fourth DCA] affirmed without a written decision, we 'look through' to the next reasoned decision (i.e., the trial court's Order Denying Post Conviction Relief, which incorporated the State's Response) as the presumptive reasoning of the Fourth DCA.").

All of Petitioner's claims are based on his allegations that his counsel performed deficiently. "In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court

established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 F. App'x. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 688). "Under the 'prejudice' prong, the defendant must show that counsel's deficient performance actually prejudiced the defendant and that, "but for the attorney's error, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland*, 466 U.S. at 688. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313, 1314 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987); *see also Strickland*, 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms. . . considering all of the circumstances").

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler*, 218 F.3d at 1314 (11th Cir. 2000). When assessing ineffective assistance of counsel claims, the court's role is not to "grade a lawyer's performance;

11

instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Strickland,* 466 U.S. at 690) (internal quotation marks omitted). "Intensive scrutiny and second-guessing of attorney performance are not permitted." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

If a petitioner's claim of ineffectiveness turns on whether counsel should have raised issues of state law, § 2254(d) requires that the federal court defer to the state court's decision regarding its own laws. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds). It is "a fundamental principle [that] state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

A.     Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Advising Petitioner that There Were No Grounds to File a Motion to Suppress [Ground 1]

Petitioner asserts counsel was ineffective because counsel failed to file a motion to suppress all physical evidence recovered from his house. [DE 1 at 5]. Specifically, Petitioner claims that counsel's advice that there were no grounds for a motion to suppress was unreasonable. [DE 1-2 at 9]. The State argues that Petitioner's claim as to the Motion to Suppress is procedurally barred because he pled guilty and therefore agreed to waive or put up a defense. [DE 11 at 42]. The Court disagrees with the State's assessment that the claim is procedurally barred because the law is clear that, in the context of plea agreements, "[a] trial attorney's failure to investigate a factual defense or a defense relying on the suppression of evidence, which results in the entry of an ill-advised

plea of guilty, has long been held to constitute a facially sufficient attack upon the conviction." *Williams v. State*, 717 So. 2d 1066, 1067 (Fla. 2d DCA 1998); *see also Zakrzewski v. State*, 866 So. 2d 688, 694 (Fla. 1994). However, for the reasons stated below, the Court denies Ground 1 on the merits.

When a petitioner "faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015)). "This is because a lawyer's performance only falls outside the range of competence demanded of counsel if she did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124, 131 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011) (addressing *Strickland*'s performance prong and stating that the relevant question was whether "no competent attorney would think a motion to suppress would have failed").

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant violates the Fourth Amendment "if the affidavit supporting the warrant contains statements that are deliberately false or made with reckless disregard for the truth and such statements are necessary to a finding of probable cause." *Sorrow v. City of Atlanta*, No. 20-14723, 2022 WL 2784603, at *3 (11th Cir. July 15, 2022). The rule in *Franks* also extends to omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit" if the inclusion of such omissions "would have prevented a finding of probable cause." *Id.* (citing *Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (quotation marks omitted). If the allegedly false material is set aside, and "there remains sufficient content in the warrant affidavit to support a finding of probable cause," the

warrant is valid. *Sorrow*, 2022 at WL 2784603, at *3 (citing *Madiwale*, 117 F.3d 1321 at 1326).

To establish the requisite probable cause for a search warrant, the affidavit submitted in support of the warrant must set forth facts establishing two elements: (1) the commission element and (2) the nexus element (that evidence relevant to the probable criminality will likely be found on the place to be searched). *State v. McGill*, 125 So. 3d 343, 348 (Fla. 5th DCA 2013) (citing *State v. Felix*, 942 So. 2d 5, 9 (Fla. 5th DCA 2006)). Further, the standard of probable cause for a search warrant does not require prima facie showing of criminal activity, just "probable" criminality. *State v. Rabb*, 920 So. 2d 1175, 1181 (Fla. 4th DCA 2006) (quoting *United States v. Syphe*rs, 426 F.3d 461, 464 (1st Cir. 2005)).

Here, the postconviction court found in relevant part, after holding an evidentiary hearing:

Defendant raises three (3) claims of ineffective assistance of his trial counsel, Kenneth Mair. In Ground 1, Defendant contends that Mr. Mair provided ineffective assistance of counsel by advising that a motion to suppress would be meritless and for failing to file the motion. For an ineffective-assistance-of-counsel claim that alleges a failure to file a motion to suppress, the defendant must establish a reasonable probability that the motion would have been successful, resulting in exclusion of the evidence. *Jefferson v. State*, 351 So. 3d 266, 271 (Fla. 2d DCA 2022) (citing *Kormondy v. State*, 983 So. 2d 418, 430 (Fla. 2007)).

Defendant argues that the search warrant affidavit and application for his residence, which resulted in the recovery of incriminating evidence upon execution, failed to establish the requisite probable cause and lacked sufficient information to alternatively support the good faith exception. A determination of probable cause encompasses a practical, common-sense examination of the "four corners" of the affidavit. *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002) (citations omitted). The affidavit must indicate that a particular person committed a crime and that the relevant evidence or contraband will likely be located in the place subject to the search. *State v. Abbey*, 28 So. 3d 208, 211 (Fla. 4th DCA 2010) (citations omitted).

At the evidentiary hearing on January 11, 2023, Mr. Mair testified that, upon receipt from the State through discovery, he reviewed the search warrant affidavit and application. Mr. Mair believed he had no grounds to file a motion to suppress and advised Defendant of the same. Defendant testified that Mr. Mair initially stated that he would file the motion and then later advised that he lacked any basis to do

so. Luisa Berti, who is currently an Assistant United States Attorney, testified that she prosecuted Defendant's cases as an Assistant State Attorney. Ms. Berti had reviewed the application and affidavit as well. She stated that she had no concerns about the warrant that would potentially lead to suppression of the evidence and that, if she had, she would have researched the issues. The Court finds that Mr. Mair and Ms. Berti provided credible testimony.

The probable cause standard for a search warrant centers on a probability, rather than a prima facie showing, of criminal activity under the totality of the circumstances. *Abbey*, 28 So. 3d at 211 (citations omitted); *see also State v. Chen*, 1 So. 3d 1257, 1263 (Fla. 2d DCA 2009) (citations omitted). Defendant had been suspected of the crimes due to his physical appearance, occupancy of the vehicle identified in a "BOLO" alert, and interview with law enforcement. The search warrant affidavit and application outlined the facts and circumstances of the robberies, including the dates, times, and descriptions of the vehicle and suspect. The affidavit also included Defendant's identification of the vehicle from the surveillance video, along with his subsequent retraction, as his brother's vehicle. Defendant had denied owning a firearm when officers had yet to disclose the type of weapon used during commission of the robberies, which had been recited in the affidavit as well. The Court finds that the search warrant affidavit contained sufficient information to form a reasonable conclusion that a fair probability existed that Defendant had been involved in the crimes.

With respect to the nexus component, issuance of a valid search warrant omits any requirement for direct proof that the evidence will be recovered from the particular place. *State v. Felix*, 942 So. 2d 5, 12 (Fla. 5th DCA 2006) (citation omitted). In the current cases, the search warrant affidavit depicted a sufficient nexus between the evidence and Defendant's residence due to the items being of the nature that would likely be found in a residence and Defendant had confirmed the address to law enforcement as his residence. *See e.g., State v. Weil*, 877 So. 2d 803, 805–06 (Fla. 5th DCA 2004); *United States v. Kapordelis*, 569 F.3d 1291, 1310–12 (11th Cir. 2009) (citations omitted); *United States v. Hamda*, 647 Fed. Appx. 1004, 1009–10 (11th Cir. 2016). Even with the warrant being issued days after the crimes, the robberies cannot be said to be from "the distant past" to render the affidavit stale. *See State v. Sabourin*, 39 So. 3d 376, 382– 83 (Fla. 1st DCA 2010).

The First District Court of Appeal in *Sabourin* explained that "'[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness'". *Id.* at 384 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). Furthermore, suppression of evidence acts as a remedy for an invalid warrant only when the affidavit lacks any indicia of probable cause. *Id.* While the search warrant affidavit established the requisite probable cause, this Court also finds that the affidavit failed to consist solely of conclusory statements or omissions to be considered "bare bones" or "fail[ing] to provide a colorable argument for probable cause", which would bar

15

application of the good faith exception to the exclusionary rule. *See Wingate v. State*, 289 So. 3d 566, 569–70 (Fla. 1st DCA 2020), *cause dismissed*, SC20-871, 2020 WL 3265112 (Fla. June 17, 2020). As a result, counsel cannot be considered ineffective for failing to file a motion to suppress given the sufficient support as to the legality of the search and seizure, in conjunction with counsel' reasonable opinion that he lacked a valid basis to file the motion. *See Branch v. State*, 952 So. 2d 470, 475– 76 (Fla. 2006). The Court therefore denies Ground 1.

[DE 7-2, Ex. 23 at 1–4].

In the instant case, Petitioner argues the affidavit for the warrant lacked probable cause. [DE 1-2 at 11]. However, Petitioner has not demonstrated that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nor has Petitioner demonstrated the deficient performance or the prejudice prongs of *Strickland* as a motion to suppress would not have been viable.

After reviewing the application and affidavit in support of the search warrant, the Court notes that the affidavit detailed an investigation in which Petitioner was suspected of multiple robberies. [DE 1-3 at 832–837]. The individual was described as "black male approximately 30 y[ea]rs of age wearing a red in color hooded sweatshirt, blue jean shorts, and black shoes" who was wearing a "camo type face mask leaving his eyes exposed, and having a dark spot on the front mouth area." *Id.* at 834. Later, the affidavit described the individual as a "black male, about 5'7" tall, thin build." *Id.* It also stated that the suspect had a ring on the middle finger of his left hand. *Id.* The vehicle involved in the robberies had a distinct horizontal mark from the front to the back passenger door. *Id.* The vehicle Petitioner was seated in when first approached by the Palm Beach County Sheriff's office "matched identically to the same vehicle in the surveillance video from

my surveillance." *Id.* at 836. The affidavit also included information about how Petitioner initially identified the vehicle involved in the robberies from a photo shown by the investigator to be his cousin's vehicle and the vehicle he was just a passenger in. *Id*. "Damion even confirmed on *more than one occasion* that the vehicle in the picture was his brother's car." *Id.* The affidavit described Petitioner's police interview in detail and explained that "this warrant is being sought to search the residence of Damion and Dwayne Delapen[ ]a for the above described evidence. Based on my education and experience, I have found that individuals that commit crimes with firearms keep said firearms on or near their persons, or vehicles, or residents [sic]." *Id.* at 837.The Court is satisfied that all of the information listed in the search warrant affidavit was sufficient to establish the commission element.

The second warrant element requires a nexus—"that evidence relevant to the probable criminality is likely to be located at the place searched." *State v. Exantus*, 59 So. 3d 359, 361 (Fla. 2d DCA 2011). "[A] warrant must contain a specific time when the illegal activity that forms the basis for issue of the warrant was observed." *State v. Jenkins*, 910 So. 2d 934, 937 (Fla. 2d DCA 2005) (*citing Dixon v. State*, 511 So. 2d 1094 (Fla. 2d DCA 1987)). The shorter the time between the alleged crimes and the search, the higher the probability that the items will still be found at the described location. *Haworth v. State*, 637 So. 2d 267, 267 (Fla. 2d DCA 1994) (*quoting Smith v. State*, 438 So. 2d 896, 898 (Fla. 2d DCA 1983)).

In this case, Petitioner confirmed that he resided with Dewayne Delapena, who was the owner of the vehicle suspected to have been used in the robberies, at the address listed in the search warrant affidavit. [DE 1-3 at 836]. Investigator Dipolito submitted the warrant application and affidavit of February 8, 2018—the day after the police stopped Petitioner inside the vehicle and

17

within days of the last alleged robbery—thus making it extremely likely that the items Investigator Dipolito sought would be in Petitioner's residence. *Id.* at 838.

Here, there is no basis to find that the search warrant violated Petitioner's Fourth Amendment rights. Moreover, the affidavit established the requisite probable cause, as explained above. Based on the foregoing, Petitioner has not established that his lawyer's performance fell outside the range of competence demanded of counsel as any motion to suppress would not have affected the outcome of the case had the defendant rejected the plea and proceeded to trial. And, the postconviction trial court properly ruled as such.

B. <u>Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Advising Petitioner that There Were Grounds for a Downward Departure Should He Enter an Open Plea [Ground 2]</u>

Kenneth Mair testified at the evidentiary hearing on Petitioner's motion for postconviction relief in state court that the "switch to pleading on the case was made at the last moment by Mr. Delapena." [DE 10-1 at 13: 9–10]. He later explained that the open plea that Petitioner entered in all five cases was completed on the day trial was actually set to begin and that it was a surprise to Mr. Mair when Petitioner stated that he wished to enter a guilty plea. *Id.* at 18: 21-25; 19: 1–3. According to Mr. Mair, as he was preparing Petitioner for trial in the courthouse cell, Defendant stated that he had a "change of plan" and wanted to plea "hoping that the Judge [would] give him a lenient sentence." *Id.* at 19: 6–12. Mr. Mair also testified that he would have told Petitioner about the statutory requirements that permit a court to impose a downward departure sentence before Petitioner entered his open plea. *Id.* at 15: 25–25; 16: 1–14; 17: 2–5. However, he testified that he never suggested that Petitioner enter an open plea or suggested that, if Petitioner did enter an open plea, Mr. Mair could file a motion for downward departure. *Id.* at 23: 10–23. In other words,

counsel clearly stated that he did not say anything about trying to get Petitioner's sentence lowered in anticipation of Petitioner making an open plea. *Id.* at 25: 6–13.

The postconviction court found in relevant part, after holding an evidentiary hearing, as follows:

> In Ground 3, Defendant claims that Mr. Mair rendered ineffective assistance of counsel by advising him to reject a plea offer of seven (7) years offered by the State. Defendant contends that counsel advised him to reject the offer and enter an open, guilty plea due to the fact that he could receive a sentence less than the plea offer upon a downward departure. Defendant alleges that Mr. Mair's advice had been patently unreasonable since no valid grounds for a downward departure existed. To prove prejudice pertaining to a plea offer, the Florida Supreme Court established a four-prong test: (1) the defendant would have accepted the plea offer if properly advised by counsel, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the sentence under the offer's terms would have been less severe than the sentence imposed. *Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013).
>
> Mr. Mair testified at the evidentiary hearing that he had never been aware of a seven-year offer and the State never extended a plea to be conveyed to Defendant. Likewise, Ms. Berti unequivocally testified that she never extended a seven-year plea, or any offer. Even as amended, the basis of Ground 3 stems from the State offering a seven-year plea, which Mr. Mair then misadvised Defendant to reject. Since no offer had been presented, according to the credible testimony of Mr. Mair and Ms. Berti, Defendant cannot obtain postconviction relief. *See Jefferson*, 351 So. 3d at 270 (citing *Forbes v. State*, 269 So. 3d 677, 680 (Fla. 2d DCA 2019)).
>
> Even if the Court focuses solely on whether counsel provided ineffective assistance with respect to the consequences of an open plea and a downward departure, the claim still fails. Mr. Mair testified that the case strategy to proceed to trial had been based upon his discussions with Defendant. He had been surprised by Defendant's decision to enter an open plea on the day that trial had been set to begin since Defendant never previously indicated an interest in a guilty plea. Mr. Mair testified that he never suggested an open plea to Defendant and that he advised Defendant as to the possibility of a downward departure only after Defendant decided to forego trial. While Defendant states that he elected to enter an open plea upon Mr. Mair's advice that a downward departure would be possible, the Court finds Mr. Mair's testimony to be credible. Since the decision to waive his right to a trial had already been reached at the time that Mr. Mair offered the alleged erroneous advice, Defendant cannot establish that but for counsel's actions he would have moved

forward with the trial, in other words the requisite prejudice that would be needed in conjunction with a showing of deficient conduct. *See Long*, 118 So. 3d at 803 (citations omitted).

At the hearing, Mr. Mair further testified that he had informed Defendant of a downward departure as a possibility but that the judge would have discretion over the sentence following entry of an open plea. Defendant testified that counsel advised that he might be eligible for a downward departure. He then stated that Mr. Mair advised he could possibly receive a sentence less than the seven-year offer. However, Defendant explained he believed that he would in fact receive a sentence less than seven (7) years. Mr. Mair testified that he advised Defendant of the lowest permissible sentence, which must be imposed unless a reason to depart has been shown. Mr. Mair stated that he advised Defendant of the sentencing range as well.

The Court finds that Mr. Mair testified credibly. In addition, the transcript of the plea conference reflects that the presiding judge thoroughly explained the consequences and sentencing exposure to Defendant prior to entry of the plea and Defendant confirmed his understanding. (Plea Conference at 5:9–6:7, 8:5–12:12, 21:15–22:2). Defendant has never claimed that counsel promised that a specific sentence would be imposed and he cannot have reasonably relied upon any misrepresentation that he would receive a sentence less than the alleged plea offer extended by the State given the judge's statements and inquiry during the colloquy. *See generally Alfred v. State*, 998 So. 2d 1197, 1200 (Fla. 4th DCA 2009); *Briggs v. State*, 337 So. 3d 4, 5 (Fla. 4th DCA 2022); *Etienne v. State*, 171 So. 3d 183, 184 (Fla. 4th DCA 2015). The sentencing judge ultimately expressed that, even if he determined that grounds existed to depart, he would decline to do so. (State Resp., Ex. "I" Sentencing Hrg. 32:19–33:7). This Court finds that Defendant has failed to satisfy his burden for postconviction relief and denies Ground 3.

[DE 7-2, Ex. 23 at 7–9].

In order for Petitioner to prevail on this issue, he must have demonstrated here or in the state court, that but for any purported error by counsel, he would not have pleaded guilty and would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). In this case, a reasonable probability does not exist that Defendant would have insisted on going to trial instead of entering an open plea had he known that there were no grounds for a downward departure. The evidence clearly shows that the plea was Petitioner's idea. Defense counsel may have advised Petitioner **AFTER** he

decided to enter an open plea that there may be grounds for a downward departure, but Petitioner still cannot establish any prejudice since he already intended to enter an open plea. The postconviction court properly summarized and analyzed Mr. Mair's testimony, contrary to what Petitioner argues in his papers. In conclusion, the state court's decision did not involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.

C.    Whether Defense Counsel Rendered Ineffective Assistance of Counsel by Advising Petitioner that the Cell Phone Records Obtained During Discovery Were Not Beneficial to Him [Ground 3]

The postconviction court found in relevant part, after holding an evidentiary hearing, as follows,

> Defendant alleges in Ground 2 that his cell phone records would have been beneficial to his defense and Mr. Mair rendered ineffective assistance of counsel by informing him otherwise. In the context of a guilty plea, the prejudice prong of an ineffective-assistance-of-counsel claim turns on a demonstration of a reasonable probability that, but for counsel's deficiencies, the defendant would have instead insisted on proceeding to trial. *Long v. State*, 118 So. 3d 798, 803 (Fla. 2013) (citations omitted). The totality of the circumstances surrounding the plea should be a part of that analysis. *Grosvenor v. State*, 874 So. 2d 1176, 1181–82 (Fla. 2004)).

> At the evidentiary hearing, Mr. Mair testified that he received cell phone records for Defendant and his brother, Dewayne Delapena (hereinafter "Dewayne"). Mr. Mair testified that he reviewed and discussed the records with Defendant. Mr. Mair advised Defendant that the documents would not be "particularly helpful". Dewayne's phone had been outside of the area during all of the crimes while Defendant's phone had been in close proximity to the location of a January 12, 2018 robbery at the time of commission, as confirmed by the testimony of Mr. Mair and Ms. Berti. Mr. Mair further testified that he informed Defendant that the data revealed his phone to be over two (2) hours away with respect to the robbery on January 28, 2018. In contrast, Defendant testified that he had been under the impression that the records showed his phone in the area of every robbery. He stated that Mr. Mair had never shown the cell phone records to him.

> Cell phones generate a time-stamped record by cell sites when a signal connects to

the network during usage or activity. *Tracey v. State*, 152 So. 3d 504, 507 n.1 (Fla. 2014); *State v. Martin*, 287 So. 3d 645, 646 (Fla. 4th DCA 2019) (citation omitted). The data may then be introduced to place an individual at a certain location, such as at the scene of the crime at the time of occurrence. *See e.g., Petit v. State*, 321 So. 3d 286, 290 (Fla. 4th DCA 2021), *review denied*, SC21-1244, 2021 WL 5149953 (Fla. Nov. 5, 2021). Defendant testified that his brother's cell phone records would have aided in his defense since if Dewayne had been outside of the area then his vehicle would have been as well. However, as mentioned above, Defendant had identified the vehicle used in the robberies as his brother's vehicle, although he retracted that statement later in the interview with law enforcement. Moreover, while the records for Defendant placed his phone away from the vicinity of a robbery, his cell phone pinged in very close proximity to the location and time of a robbery on January 12, 2018. (D.E. #9, Probable Cause Affidavit Narrative). Ms. Berti testified at the hearing that additional evidence, including the suspect's physical characteristics, clothing, and vehicle, then connected subsequent robberies.

Ms. Berti also testified that the records placing Defendant's cell phone outside of the area would be able to indicate that the phone had been left in a separate location or that Defendant had refrained from using his phone during those periods of time. Ms. Berti opined that that the absence of cell phone data corresponding to the later crimes still provided supporting evidence. She explained that the records revealed activity or usage followed by a lack thereof at the time of the crime and then continued activity afterwards. The Eleventh Circuit Court of Appeals previously addressed the same matter when discussing that, depending on the network, cell phones may only generate data during a connected call and the absence of data may indicate that no calls had been made or accepted at the time of the crime. *United States v. Bowers*, 811 F.3d 412, 427 (11th Cir. 2016). Additionally, Ms. Berti testified that she employed a mapping program to chart Defendant's location in accordance with the cell phone data from the records. Data prior to and subsequent to a crime may be utilized to infer that a defendant had been in transit to and from the crime scene. *Id.*

The Court considers the strength of the State's case in evaluating Defendant's assertion that he would have insisted upon proceeding to trial to establish prejudice. *See Griffin v. State*, 114 So. 3d 890, 899 (Fla. 2013) (citing *Grosvenor*, 874 So. 2d at 1181). Ms. Berti testified as to the evidence, including a recorded conversation between Defendant and his brother, and exhibits she prepared for trial. She discussed the details of the crimes at the plea conference on March 5, 2019, as well, which encompassed a witness's identification of a distinctive scar on the suspect that matched a scar on Defendant's face, when reciting the factual basis for the plea. (D.E. #248, State Resp., Ex. "E" Plea Conference 16:8–10). In light of the above, the Court denies Ground 2.

[DE 7-2, Ex. 23 at 4–6].

Having reviewed the hearing testimony from the 3.850 hearing, the Court finds that the postconviction court properly summarized and analyzed the witness testimony. Petitioner cannot meet the *Strickland* test here as he cannot establish that his counsel's performance fell below an objective standard of reasonableness. Petitioner's counsel testified as the postconviction hearing that he discussed all of the phone records with Petitioner and explained that they would not have been particularly helpful, especially since Petitioner's phone had been in close proximity of the January 12, 2018 robbery. Such performance was not deficient.

Next, Petitioner cannot establish prejudice. The testimony at the postconviction hearing showed that various other evidence established probable cause for the search warrant. Petitioner also cannot establish the prejudice prong because he has not shown that he would not have entered the open plea had he realized the phone records were beneficial to his defense. It is well-established that "a voluntary and intelligent guilty plea must stand unless induced by misrepresentations made to the accused by the court, prosecutor, or his own counsel." *Haile v. United States*, No. 17-CR-20633, 2021 WL 11702298, at *3 (S.D. Fla. May 7, 2021), *report and recommendation adopted*, No. 1:19-22161-CV, 2021 WL 11702297 (S.D. Fla. Aug. 3, 2021), *aff'd*, No. 21-12955, 2022 WL 2251710 (11th Cir. June 22, 2022) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). In the case at hand, the colloquy between Petitioner and the trial court at the time of the change of plea hearing establishes that he was satisfied with his counsel's services, that Petitioner knowingly, intelligently and voluntarily entered the guilty plea, and that Petitioner entered into the plea

agreement of his own free will. *See* DE 8. Petitioner also initialed and signed the Waiver of Rights Sheet. [DE 7-1, Ex. 11]. Furthermore, in order for Petitioner to prevail on this issue, he must have demonstrated here or in the state court, that but for any purported error by counsel, he would not have pleaded guilty and would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). Petitioner simply cannot establish prejudice in this case.

In conclusion, the court's decision did not involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. Petitioner entered a knowing and voluntary plea in state court to numerous crimes, and his Petition filed in this Court is wholly meritless.

## VI.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b) to the Rules Governing § 2254 Proceedings.

After a careful review of the record, the Court finds that Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may [be] issued[d] . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir. 2001). Because the claims raised in the Petition are clearly without merit, Petitioner cannot satisfy the *Slack* test. Upon consideration of the record as a whole, the District Judge should deny a certificate of appealability.

## VII.    RECOMMENDATION TO THE DISTRICT JUDGE

A very careful review of the entire record establishes that Petitioner's claims are meritless and due to be denied for the reasons stated above. No evidentiary hearing is necessary. The Petition fails to establish any grounds for relief. Accordingly, the undersigned United States Magistrate Judge recommends that the United States District Judge **DENY** Petitioner's Petition [DE 1] and **DENY** a Certificate of Appealability.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 3rd day of February 2025.


WILLIAM MATTHEWMAN
United States Magistrate Judge